UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES EDWARD KITCHEN,

Plaintiff,

v.

TRISSY CHUN et al.,

Defendants.

Case No. 2:24-cv-149

Honorable Jane M. Beckering

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis.* (ECF No. 2.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. The events

about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Defendants Dr. Trissy Chun; RN Michelle Vieau, RN Jessica Nirkkola, ACNP Lorraine Parrish, Wellpath Now, MDOC Director Heidi E. Washington, and Gretchen Whitmer in their official and personal capacities. Plaintiff also names the MDOC and the State of Michigan as Defendants.

Plaintiff alleges that on July 14, 2023, after being transported to the hospital for a possible reaction to Bactrim, outside medical providers discovered that Plaintiff's "aorta was unraveling essentially tearing apart". (Compl., ECF No 1, PageID.4.) Plaintiff was diagnosed with a "Type I Dissection of Ascending Aorta." (ECF No. 1-3, PageID.67.) While hospitalized, Plaintiff suffered complications, including renal failure. (*Id.*, PageID.70–89.)

Plaintiff contends that his July 2023 health issues stemmed from an incident that occurred on May 18, 2023, when Plaintiff experienced "tearing chest pains" after being given an injection of Toradol for a muscle spasm, as well as his prescribed medications. (*Id.*, PageID.4–5.) On May 18, 2023, Plaintiff was seen by Defendant Vieau in healthcare for a complaint of "back pain." (ECF No. 1-2, PageID.42.) Defendant Vieau consulted with Defendant Parrish, and it was ordered that Plaintiff receive one intramuscular injection of "ketorolac tromethamine," and one intramuscular injection of "methylpred soc succ" on May 18, 2023, only. (ECF No. 1-2, PageID.45–46.) It was also ordered that Plaintiff receive one tablet of methocarbamol three times daily for six days and continue to receive meloxicam oral tablets to begin on May 19, 2023. (*Id.*) Plaintiff alleges that Defendant Chun ordered Plaintiff's original medications, that the injections were administered by Defendant Vieau and co-signed by Defendant Parrish, and that all of

Plaintiff's medications were retrieved from the MDOC pharmacy by Defendant Nirkkola. (Compl., ECF No. 1, PageID.5.)

Plaintiff returned to healthcare 10 minutes after being released to the unit with complaints of shortness of breath. (ECF No. 1-2, PageID.54.) Defendant Vieau evaluated Plaintiff and immediately called an ambulance to have Plaintiff transported to the hospital. (*Id.*) Upon his return to KCF, Defendant Nirkkola noted that Plaintiff had been diagnosed with a "reaction to Toradol/solumedrol" and contacted Defendant Chun. (*Id.*)

Medical records from Plaintiff's May 18, 2023 treatment by the outside medical provider indicate that Plaintiff was to follow up with his primary care doctor regarding better management of his high blood pressure. (*Id.*, PageID.61.) The non-party outside medical provider noted: "Unfortunately, I believe you had some type of reaction to either the Solu-Medrol Injection or the Toradol Injection, I am unsure which one it may be." (*Id.*, PageID.62.)

After returning from the hospital on May 18, 2023, Plaintiff was instructed to continue taking Meloxicam three times daily for six more days. (Compl., ECF No. 1, PageID.5.)

Plaintiff contends that Defendants Whitmer and Washington failed to protect Plaintiff and failed to provide him with proper medical care. (*Id.*)

Plaintiff seeks monetary damages in the sum of $300 million dollars. (*Id.*, PageiD.8.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Based upon the foregoing factual allegations, the Court construes Plaintiff's complaint as raising Eighth Amendment claims for deliberate indifference against all Defendants.

### A. Defendant Wellpath Now and Official Capacity Claims Against Any Defendant Employed by Wellpath Now

Plaintiff sues Defendant Wellpath Now and Defendant Chun in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) Plaintiff alleges that Defendant Chun is an employee

of Wellpath Now, a private entity "contracted with MDOC to provide healthcare to prisoners." (*Id.*)

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 n. 55 (1978)). That is, an official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). If Defendant Chun is employed by Wellpath Now, then an official capacity suit against Defendant Chun is treated as a suit against Wellpath Now itself.

A private entity, such as Wellpath Now, that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty*., 103 F.3d 495, 509 (6th Cir.

1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty*., 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to any Defendant employed by Wellpath Now, Wellpath Now's liability, like a municipality's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's constitutional] rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath Now's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

Here, Plaintiff does not make any specific factual allegations against Wellpath Now. He certainly does not allege facts that would plausibly suggest the existence of any policy or custom of Wellpath Now that could be said to be the moving force behind any constitutional violation. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations would be wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

Accordingly, because Plaintiff fails to allege the existence of a policy or custom of Wellpath Now, Plaintiff's claims against Wellpath Now and his official capacity claims against Defendant Chun and any individual Defendant employed by Wellpath Now will be dismissed.

**B. Official Capacity Claims Against Any Defendants Employed by the MDOC or the State of Michigan**

Plaintiff alleges that Defendants Vieau, Nirkkola, Parrish, and Washington are employed by the MDOC, and that Defendant Whitmer is an official of the State of Michigan. (ECF No. 1, PageID.3–4.) He brings claims against them in both their individual and official capacities. As to these Defendants, a suit against them in their official capacities is equivalent to a suit against the MDOC or the State of Michigan. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The State of Michigan is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claims against the Defendants Vieau, Nirkkola, Parrish, Washington, and Whitmer in their official capacities are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

In addition, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit

has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Here, Plaintiff seeks monetary damages only. (*See* ECF No. 1, PageID.8.) An official capacity defendant employed by the state is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff's official capacity claims against Defendants Vieau, Nirkkola, Parrish, Washington, and Whitmer and any other Defendant employed by the MDOC are also barred by the Eleventh Amendment.

### C. Defendants Washington and Whitmer Individually

Plaintiff faults Defendants Washington and Whitmer for the wrongs he suffered at the hands of others. Plaintiff alleges that Defendants Washington and Whitmer failed to protect Plaintiff from harm or improper medical care; however, Plaintiff does not attribute any actions to these Defendants and fails to allege any facts that would suggest that they were involved in the provision of medical care to Plaintiff.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials [or entities] arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person or entity is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se*

complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention, much less attribute any misconduct to, Defendants Washington and Whitmer. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") and, therefore, fail to state a claim upon which relief can be granted.

To the extent that Plaintiff seeks to hold Defendants Washington and Whitmer liable for their roles as MDOC Director and Governor, respectively, government officials like these Defendants may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Likewise, "[i]ndividual liability on a failure-to-train or supervise theory 'must be based on more than respondeat superior, or the right to control employees.'" *Zakora v. Chrisman*, 44 F.4th 452, 475 (6th Cir. 2022) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th

Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300) (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts to suggest that Defendants Washington and Whitmer authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's complaint, therefore, fails to state a claim against Defendants Washington and Whitmer.

**D. Eighth Amendment Claims**

Plaintiff alleges that the remaining Defendants Chun, Vieau, Nirkkola, and Parrish provided Plaintiff with a dangerous combination of medications, resulting in damage to Plaintiff's aorta and renal failure.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in connection with their denial of or improper provision of medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Here, given Plaintiff's allegations regarding damage to his aorta and kidneys and need for significant outside medical care, the Court concludes that Plaintiff has alleged sufficient facts to satisfy the objective component of the serious medical need. However, that does not end the Court's inquiry.

As to the subjective component, Plaintiff alleges that Defendant Vieau, in an effort to treat Plaintiff's back pain, consulted with Defendant Parrish, and administered two types of intramuscular injections in addition to the medications that had previously been prescribed to Plaintiff by Defendant Chun. There are no well-pleaded factual allegations in Plaintiff's complaint that would plausibly suggest that Defendants Chun or Nirkkola had any role in the decision to

prescribe Plaintiff either of the intramuscular medications or that any named Defendant was subjectively aware that the medications that had been ordered and administered to Plaintiff would cause the high blood pressure for which Plaintiff was treated on May 18, 2023, or the subsequent Type I Dissection of Ascending Aorta and renal failure that Plaintiff experienced in July 2023.[1] The subjective component requires that the actor have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). The "knowledge" element does not allow for constructive knowledge. It requires more than a misdiagnosis or a claim that a defendant reasonably should have known about a risk. *Comstock*, 273 F.3d at 703. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838.

At best, Plaintiff's complaint alleges that Defendants erroneously prescribed and administered to Plaintiff two medications that should not have been taken together. As the Sixth Circuit has instructed, evidence of negligence "is not enough to sustain an Eighth Amendment claim," even if it "produce[s] added anguish," *Santiago v. Ringle*, 734 F.3d 585, 592 (6th Cir. 2013) (internal quotation marks and citations omitted), or considerable suffering, *Gabehart*, 1997 WL 160322, at *2. Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claims will be dismissed.

[1] The records submitted by Plaintiff regarding Plaintiff's outside medical treatment do not support Plaintiff's allegation that the combination of medications caused Plaintiff's May 18, 2023 and July 2023 medical issues. As to Plaintiff's May 18, 2023 treatment, it was determined only that Plaintiff had "some type of reaction to either the Solu-Medrol Injection or the Toradol Injection." (ECF No. 1-2, PageID.62.) Nonetheless, the Court's conclusion is the same regardless of the cause of Plaintiff's medical conditions.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: September 29, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge